# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

## WESTERN DIVISION

| | | |
|---|---|---|
| JOEL P. MOYER, et al. | ) : | Case No. C-1-01-140 |
| Plaintiffs, | ) : | Judge Weber |
| -v- | ) : | THIRD AMENDED COMPLAINT AND JURY DEMAND |
| PEOPLE TO PEOPLE INTERNATIONAL, INC., et al. | ) : ) : | |
| Defendants. | ) : ) : | |

For their Third Amended Complaint against Defendants, Plaintiffs state as follows:

## PARTIES

1.      Joel P. Moyer is an individual who, at all times relevant hereto, resided at 604 Marietta Avenue, Terrace Park, Hamilton County, Ohio.

2.      Plaintiff David M. Moyer is an individual who, at all times relevant hereto, resided at 604 Marietta Avenue, Terrace Park, Hamilton County, Ohio.

3.      Marcia G. Moyer is an individual who, at all times relevant hereto, resided at 604 Marietta Avenue, Terrace Park, Hamilton County, Ohio.

4.      David M. Moyer and Marcia G. Moyer are husband and wife, and the natural parents and guardians of Joel P. Moyer.

5.      Ambassador Programs, Inc. is, upon information and belief, a for-profit corporation organized and incorporated under the laws of the State of Washington, with its

- 2 -

principal place of business in Spokane, Washington.  Ambassador Programs, Inc. is, upon information and belief, a wholly owned subsidiary of a publicly traded company, Ambassadors Group, Inc.

6.      Defendant Humana / ChoiceCare is, upon information and belief, a for profit corporation licensed to do business in the State of Ohio.  Humana / ChoiceCare is the third party administrator for the medical benefits plan which paid medical benefits to or on behalf of Joel Moyer and his parents.

7.      This Court has jurisdiction over Defendants, and venue is proper in this Court.

## FACTS COMMON TO ALL COUNTS

8.      Plaintiffs incorporate the foregoing allegations by reference as if fully rewritten herein.

9.      Upon information and belief, Ambassador Programs, Inc. used the name "People to People" under a license or other arrangement with People to People International, Inc., a non-profit organization.

10.     Upon information and belief, Ambassador Programs, Inc. organized, marketed, sold, and/or facilitated a "People to People Student Ambassador Program" trip for a "delegation" consisting primarily of Cincinnati and Northern Kentucky teenage residents.  The trip and travel arrangements included, but were not limited to, lodging and "homestays" with residents of England, Scotland, and Ireland in July 1999.

- 3 -

11.     Plaintiffs reasonably relied on the image and reputation of People to People in making the decision that Joel would apply to be a delegate on a July 1999 trip.

12.     The People to People Student Ambassador Program delegates were required to complete and submit an application to be accepted as a delegate on the program.

13.     In late 1998, Joel Moyer applied to be a Student Ambassador with the People to People Student Ambassador Program.  In 1999, Joel signed up for the "Program for travel in the United Kingdom, including Ireland and Scotland."

14.     The written materials distributed to the prospective delegates by Ambassador Programs, Inc. stated the goals of the People to People Student Ambassador Program including, but not limited to, exploring and understanding different peoples and cultures as students.

15.     Once he was chosen to be a delegate, Joel and his parents attended and participated in local organizational and planning meetings and activities put on and/or sponsored by Ambassador Programs, Inc.

16.     At the foregoing organizational and planning meetings, and/or separately through the mail, Ambassador Programs, Inc. provides the students and parents with various written materials which, inter alia, discourage more than two telephone calls to the student during the three week program.

17.     The People to People Student Ambassador Program printed materials promoted: "The aim of each Student Ambassador delegation is to provide, wherever possible, a balanced

- 4 -

exposure to a variety of nations in a specific region through such activities as ... homestays with selected host families."  The People to People Student Ambassador Program printed materials also represented:  "One of the most interesting and rewarding portions of the program will be the opportunity to 'meet the people' during homestay experiences.  Ambassadors are matched with carefully selected host families. . . ."

18.    Plaintiff reasonably believed that those organizing and operating the People to People Student Ambassador Program would be responsible for making homestay arrangements.

19.    The undertaking of placing students on a People to People Student Ambassador Program in homes in a foreign country is one which, if not done with care, will result in danger to those students.

20.    There were three Delegation Leaders acting as chaperones on the trip representing Ambassador Programs, Inc.

21.    Ambassador Programs, Inc. and its chaperones took custody of the children on the People to People Student Ambassador Program.

22.    By taking custody of Joel Moyer on this trip, Ambassador Programs, Inc. assumed the duty of care which the law imposes on one who has taken custody of a minor where the minor is deprived of his normal opportunities for protection.

- 5 -

23.    Ambassador Programs, Inc. was cognizant that children on its programs had to be protected and kept out of harm's way, and Ambassador expected its customers to rely on its emphasis on safety.

24.    Part of the concept of keeping children out of harm's way during a homestay would be to place them in a situation that would be most safe.

25.    Ambassador Programs, Inc. recognize the foregoing in their literature which purports to place students in "carefully selected homestays."

26.    The Moyer family had a right to expect that the homestays in which Joel was placed were reflective of the information placed in the People to People Student Ambassador Program brochures.

27.    Ambassador Programs, Inc. should have reasonably anticipated a possibility of harm to Joel if it failed to exercise reasonable care while he was in Ambassador Programs, Inc.'s custody, and particularly if it failed to exercise reasonable care in fulfilling its obligation to place People to People Student Ambassador Program participants in suitable homestays.

28.    Ambassador Programs, Inc. owed a duty of reasonable care to Joel Moyer and his family, including a duty to exercise reasonable care to protect Joel against unreasonable risk of harm from the acts of a third party, including criminal acts.

- 6 -

29.    Ambassador Programs, Inc.'s aforementioned duty to exercise reasonable care, including a duty to exercise reasonable care to protect Joel against unreasonable risk of harm from the acts of a third party, including criminal acts, was non-delegable.

30.    Upon information and belief, a United Kingdom company called EIL Ltd., contracted with Ambassador Programs, Inc. to make travel arrangements for a People to People Student Ambassador Program "delegation" consisting primarily of Cincinnati and Northern Kentucky residents.   The arrangements included, but were not limited to, lodging and "homestays" with residents of England and Scotland in July 1999.

31.    Upon information and belief, Ambassador Programs, Inc. had not previously worked, or had experience with EIL Ltd. in making arrangements for travel and lodging for its program participants.

32.    The foregoing contractual arrangements, and the fact that Ambassador Programs, Inc. would not be directly fulfilling its representation and obligation of providing carefully selected homestays, were not disclosed to Joel Moyer, David Moyer, or Marcia Moyer.

33.    Ambassador Programs, Inc. failed to disclose to and/or purposely concealed from People to People Student Ambassador Program participants and their families that a third party would actually select the homestay hosts and make the homestay arrangements.

34.    Ambassador Programs, Inc. is liable for acts or omissions of EIL Ltd. relating to homestay placements.

- 7 -

35.     Ambassador Programs, Inc. represented that children on the program, including Joel Moyer, would stay with carefully selected families.

36.     Ambassador Programs, Inc. had established guidelines with respect to situations and circumstances of acceptable homestays, and one of those guidelines prohibited homestay hosts to be single persons, or couples with no children.

37.     These guidelines were allegedly given or transmitted to EIL Ltd.

38.     Ambassador Programs, Inc. did nothing to ensure that EIL Ltd. complied with its foregoing guidelines with respect to homestays.

39.     Ambassador Programs, Inc., in fact, believed that it had no responsibility to look at homestay families, or verify that the homestay families were carefully selected by EIL, Ltd.

40.     Furthermore, following the events recounted herein, Ambassador Programs has claimed that it owed no duty to the children in its custody, and that it had no responsibility to verify that the children were placed with carefully selected host families, or that its guidelines for selecting homestays were followed.

41.     On or about July 15, 1999, Joel Moyer and the other individuals traveling with the People to People Student Ambassador Program delegation arrived in Scotland.  During July 15-18, the People to People Student Ambassador Program delegation was to have homestays with host families in Edinburgh, Scotland.

- 8 -

42.     The aforementioned homestays in Edinburgh, Scotland were, according to the People to People Student Ambassador Program literature, supposed to be with carefully selected host families.

43.     Ambassador Programs, Inc. and/or EIL Ltd. failed to make appropriate inquiries, implement appropriate safeguards, take appropriate precautions, were negligent and/or otherwise failed to use reasonable care in arranging for Joel's homestay in Edinburgh, Scotland.

44.     Joel Moyer and another member of the People to People Student Ambassador Program delegation were assigned to stay in Edinburgh in the apartment of an Edinburgh resident named Ronald Carroll (hereinafter "Carroll").

45.     Carroll became a homestay host for Joel Moyer on the People to People Student Ambassador trip after responding to an advertisement in a local Edinburgh newspaper.

46.     Carroll was acting as an agent of EIL Ltd. and Ambassador Programs, Inc., in his role as a homestay host.

47.     Carroll was a single male approximately thirty seven years of age at that time.

48.     Contrary to the statements and representations in the literature for the People to People Student Ambassador Program, Carroll was not a carefully selected and safe host family.

49.     On the night of July 16, Carroll offered alcoholic beverages to Joel Moyer, then sixteen years of age, and encouraged him to consume them.  Joel became intoxicated, and as a result of his consumption, became sick.

- 9 -

50.    Carroll imposed himself on Joel, and engaged in fondling and sexually abusing him.

51.    The foregoing incident instantly caused Joel extreme psychological, mental and emotional anguish.

52.    As a proximate result of the extreme psychological and emotional pain and suffering and mental anguish which Joel was enduring, Joel determined on December 30, 1999, that he would take his own life.  During the early morning hours of December 31, 1999, Joel drove to Mercy St. Teresa Center in Mariemont, Ohio and unsuccessfully tried to kill himself by jumping from the top of the parking garage.

53.    As a result of his attempted suicide, Joel sustained multiple serious physical injuries, and further psychological and emotional trauma and damage, which has and will continue to cause him psychological and emotional pain and suffering.

54.    The foregoing physical, psychological, and emotional trauma, injuries, and damage were all proximately caused by the negligence of Defendants in arranging the homestay in Edinburgh with Ronald Carroll.

55.    Joel's physical, psychological, and emotional injuries are severe and permanent in nature.

- 10 -

56.     Joel's permanent physical injuries have and will continue to limit his ability to engage in the normal activities of a young adult, will negatively impact his enjoyment of life in the near future and long term, and will require medical care and treatment in the future.

57.     As a proximate result of the negligence of Defendant Ambassador Programs, Inc., Joel Moyer and his family have incurred substantial damages as set forth above.

## COUNT I

58.     Plaintiffs incorporate the foregoing allegations by reference, as if fully rewritten.

59.     Ambassador Programs, Inc. owed Plaintiffs a non-delegable duty to use reasonable care to protect Joel Moyer against unreasonable risk of harm from the acts of third parties, including criminal acts.

60.     The placement of Joel Moyer with Ronald Carroll as a homestay host in Edinburgh in July 1999 constitutes breaches of the duties owed by Ambassador Programs, Inc.

61.     The foregoing breaches were proximate causes of Joel Moyer's injuries and Plaintiffs' damages.

## COUNT II

62.     Plaintiffs incorporate the foregoing allegations by reference, as if fully rewritten herein.

- 11 -

63.    Ambassador Programs, Inc. was negligent in the selection and supervision of EIL Ltd. as the organization handling travel and lodging arrangements on the People to People Student Ambassador Program trip in July 1999.

64.    The foregoing negligence was a proximate cause of Joel Moyer's injuries and Plaintiffs' damages.

## COUNT III

65.    Plaintiffs incorporate the foregoing allegations by reference, as if fully rewritten herein.

66.    Ambassador Programs, Inc. had a non-delegable duty to use reasonable care in screening and selecting host families, and in selecting host families in accordance with Ambassador Programs, Inc.'s representations.

67.    The selection of Carroll as a homestay host for Joel Moyer constitutes a breach of that duty.

68.    The foregoing breach of that duty was a proximate cause of Joel Moyer's injuries and Plaintiffs' damages.

## COUNT IV

69.    Plaintiffs incorporate the foregoing allegations by reference, as if fully rewritten herein.

- 12 -

70.    Ambassador Programs, Inc. never disclosed to and/or purposely concealed from Plaintiffs the existence, identity or involvement of EIL Ltd. in making travel and lodging arrangements for the trip.

71.    Ambassador Programs, Inc. is vicariously liable for the actions, omissions, and negligence of EIL Ltd. based on the doctrine of agency by estoppel.

## COUNT V

72.    Plaintiffs incorporate the foregoing allegations by reference, as if fully rewritten herein.

73.    Ambassador Programs, Inc. solicited Joel Moyer and his parents based upon, inter alia, the opportunity for a minor to have the experience of living with families in foreign countries.

74.    Ambassador Programs, Inc. knowingly, willfully, and intentionally solicited Joel Moyer and his parents to agree to place Joel in its care, custody, and control for a trip to foreign countries.

75.    Ambassador Programs, Inc. knowingly, willfully, and intentionally misled Joel Moyer and his parents to believe that it would carefully select the homestay families; and intentionally withheld the fact that some entity other than Ambassador Programs, Inc. would make such arrangements.

- 13 -

76.    In fact, Ambassador Programs, Inc. retained the services of EIL Ltd. to act as its agent in making such homestay arrangements, but purposefully withheld telling the program participants and their families that EIL, Ltd., and not Ambassador Programs, Inc., would be making such arrangements.

77.    Ambassador Programs failed to carefully select EIL Ltd. as its agent, and failed to carefully oversee the homestay arrangements made by its agent EIL Ltd.

78.    EIL Ltd., acting as Ambassador Programs' agent in making homestay arrangements, intentionally made a decision with respect to the placement of Joel Moyer, a minor, that violated Ambassador Programs, Inc.'s own express rules with respect to placing minors in their custody with families and Ambassador Programs, Inc.'s express representations made to Joel Moyer and his parents.

79.    Ambassador Programs, Inc. and its agents knowingly violated the trust placed in it by the minor Joel Moyer and his family to carefully select homestay families by placing Joel in the care, custody and control of a single 37 year old male.

80.    The misrepresentations, actions and inactions of Ambassador Programs, Inc.; its belief that it owed no duty to Plaintiffs; and its belief that it was not responsible to look at homestay hosts or verify that homestay hosts were carefully selected, demonstrate that Ambassador Programs' breaches of duties were reckless, willful, wanton, and done with malice, insult, oppression, and/or a conscious disregard for the rights of Plaintiffs that has a great probability of causing substantial harm.

- 14 -

81.     Based on the foregoing, Plaintiffs are entitled to an award of punitive damages against Ambassador Programs, Inc. in order to punish and deter it from similar conduct in the future.

## COUNT VI

82.     Plaintiffs incorporate the foregoing allegations by reference, as if fully rewritten herein.

83.     David and Marcia Moyer are husband and wife, and the natural parents and guardians of Joel Moyer.

84.     In allowing Joel to make the trip abroad in the summer of 1999, Mr. and Mrs. Moyer placed their faith and confidence in the People to People Student Ambassador Program to provide for safe travel and accommodations, including homestays with carefully selected host families.

85.     As set forth above, Ambassador Programs, Inc., and its undisclosed agent, EIL, Ltd., failed to make appropriate inquiries, implement appropriate safeguards, take appropriate precautions, were negligent and/or otherwise failed to use reasonable care in arranging for a sixteen-year-old boy to stay with a single male in his thirties.

86.     As a result of Joel's attempted suicide, and the simultaneous revelation of the incident which occurred in Scotland on July 16, 1999, Mr. and Mrs. Moyer have lost the care, affection, services, and consortium of their son, Joel.

- 15 -

87.     As parents and natural guardians of Joel Moyer, Mr. and Mrs. Moyer are responsible for and have paid reasonable expenses incurred in the medical care and treatment rendered to Joel for the physical, psychological, and emotional injuries and damages he sustained.

88.     As a proximate result of the negligence of Defendants, Mr. and Mrs. Moyer have incurred substantial damages as set forth above, and are entitled to compensation from Ambassador Programs, Inc.

## COUNT VII

89.     Plaintiffs incorporate the foregoing allegations by reference, as if fully rewritten herein.

90.     At all times relevant herein, Humana/ChoiceCare was the Third Party Administrator ("TPA") of Plaintiffs' health benefit plan, and is subrogated and/or has been assigned the rights to recover medical expenses incurred by or on behalf of Joel Moyer arising out of this incident.

91.     As a result, Humana/ChoiceCare has an interest in the within action as a result of its claim, and is being joined to allow it to defend and protect its claims.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiffs demand that judgment be entered in their favor against Defendant Ambassador programs, Inc. as follows:

- 16 -

A.     For an award of compensatory damages to Joel in an amount to be determined by the trier of fact, but in excess of the jurisdictional limits of this Court, for the past, present, and future physical, psychological, and emotional pain and suffering proximately caused by the breaches of duties and negligence of Ambassador Programs, Inc. and its undisclosed agents;

B.     For an award of compensatory damages to Mr. and Mrs. Moyer in an amount to be determined by the trier of fact, but in excess of the jurisdictional limits of this Court, for medical expenses they incurred as Joel's parents for his medical care and treatment, and for their past, present, and future loss of affection and consortium as set forth above in Count VI, all of which was proximately caused by the breaches of duties and negligence of Ambassador Programs, Inc. and its undisclosed agents;

C.     For an award of punitive damages in favor of Plaintiffs against Defendant Ambassador Programs, Inc.;

D.     For all costs incurred by Plaintiffs in prosecuting this action, including, but not limited to reasonable attorneys fees and court costs; and

E.     Any and all other and further relief to which Plaintiffs may be entitled.

E.     Plaintiffs also demand that Defendant Humana/ChoiceCare be ordered to appear and represent its interest in this lawsuit, or be forever barred from pursuing its claims.

- 17 -

Respectfully submitted,

_____

Louis F. Gilligan (0021805)
Peter J. Stautberg (0061691)
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202
(513) 579-6400
(513) 579-6457 Fax
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs demand a jury trial of this action as provided by the Federal Rules of Civil Procedure.

_____

Peter J. Stautberg

- 18 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Third Amended Complaint and Jury Demand was served on the ___ day of April, 2004, by United States mail, on the following:


Karl Ulrich, Esq.
Robert Hanseman, Esq.
Martin Beyer, Esq.
Sebaly, Shillito, and Dyer
1900 Kettering Tower
Dayton, Ohio  45423
Attorneys for Ambassador Programs, Inc.

Gregory G. Beck, Esq.
Kreiner & Peters
P.O. Box 1209
Dublin, Ohio  43107
Attorney for Humana/ChoiceCare


_____
Peter J. Stautberg

1232192.1