IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(Cincinnati)

| | | |
|---|---|---|
| JOEL P. MOYER, et al. | : | CASE #  1:01-CV-140 |
| | : | |
| Plaintiffs, | : | Senior Judge Herman J. Weber |
| | : | |
| v. | : | DEFENDANT'S MEMORANDUM |
| | : | OPPOSING PLAINTIFFS' MOTION |
| AMBASSADOR PROGRAMS, INC., et al. | : | FOR LEAVE TO FILE THIRD AMENDED COMPLAINT |
| | : | |
| Defendants. | : | |

**I.     INTRODUCTION**

The case has been pending for over three years.  The Court issued a summary judgment decision earlier this year.  Trial is scheduled in August.  Nevertheless, Plaintiffs have moved to amend their complaint for a *third time*.  They seek to add a claim for willful and wanton misconduct against defendant Ambassador Programs, Inc. (Ambassador) for a European subcontractor's alleged negligent selection of a homestay host in Edinburgh, Scotland.  Plaintiffs also seek punitive damages against Ambassador.

As set forth below, the Court should overrule the plaintiffs' attempt to amend their complaint.  Nothing new in the way of evidence justifies adding a willful and wanton count at this late hour.  More important, any such amendment would be futile because Ambassador would

be entitled to summary judgment on the amended claim and punitive damage request. Ambassador at worst acted negligently.  In no way did it act willfully or wantonly.

## II.    ANY AMENDMENT WOULD BE FUTILE

While the civil rules reflect that leave to amend should be freely given when justice so requires, the Supreme Court and Sixth Circuit hold that a court should not grant leave to amend when any amendment would be futile.  *Foman v. Davis*, 371 U.S. 187, 83 S.Ct. 273 (1962); *Crawford v. Roane*, 53 F.3d 750 (6th Cir. 1995).  An amendment would be futile when, as here, the opposing party would be entitled to summary judgment if the court were to grant leave. *Sierra Club v. Pena*, 915 F.Supp. 1381, 1387 (N.D. Oh. 1996) (denying leave to amend complaint because court would grant summary judgment to defendant on proposed additional claim).

Here, the Court should deny Plaintiffs' motion because the amended pleading would be futile.  Ambassador would file a summary judgment motion asking the court to throw out the "willful and wanton misconduct" claim and the request for punitive damages.  This would most likely jeopardize the August trial date.  Regardless, based on the evidence in the record, there would be no genuine issue of material fact.  Ambassador would be entitled to judgment as a matter of law.

### A.    Relevant facts

Most of the following facts are taken from the Court's February 23, 2004 summary judgment order (Doc. # 103)  (Order).  Ambassador is a for-profit corporation located in Spokane, Washington.  It organizes overseas travel programs, including the People to People Student Ambassador Program (Program).  Order at 6.   Part of the Program includes homestays, which means that trip participants sometimes stay in the homes of foreign nationals.  Order at 3.

In the summer of 1999, Joel Moyer and a number of other high school students took a Program trip to the UK.  Joel and fellow trip participant Dan Kelley stayed with Ronnie Carroll's house in Edinburgh, Scotland for three nights.  During the second night, Joel visited a pub, where he consumed alcohol in violation of trip rules.  The Moyers allege that Mr. Carroll offered Joel several beers after Joel returned from the pub.  Joel accepted the alleged offers, and later vomited on the living room carpet.  Joel then went into the bathroom and kneeled down over the toilet.  Mr. Carroll allegedly came in five minutes later and kissed and groped Joel for ten to twelve minutes.  Joel claims he asked Mr. Carroll to stop and Mr. Carroll did.  Order at 7.  Mr. Carroll steadfastly denies kissing or groping Joel.  Order at 8.

On December 30, 1999, Joel went to the top of a three-story parking garage, sat on the ledge, and slipped himself off.  Joel suffered injuries as a result of his suicide attempt.  Order at 8.

The Moyers later sued, claiming Ambassador was responsible for Joel's suicide attempt.  They claim that Ambassador should be held liable for Mr. Carroll's alleged criminal activity.

Ambassador did not select Mr. Carroll as a homestay host.  Rather, former defendant E.I.L., Ltd. (EIL) did.  Ambassador had subcontracted with EIL to arrange homestays and supply all other travel services for the July 1999 trip.  Ambassador gave EIL a copy of its "Guidelines for Implementation of Standards of Excellence" (Guidelines), and expected EIL would abide by those Guidelines.  Order at 4.

Among other things, the Guidelines encourage overseas vendors to place trip participants with married couples or single adults who have kids roughly the same age as the trip participant.  Ambassador's Pamela Duckmanton twice communicated the Guidelines to EIL.  She went over them when EIL representatives visited Ambassador's home office in Spokane.  And she

explained them to EIL representatives during a "look and see" trip to the UK in early 1999. Order at 4.

EIL's Frances Carney selected Mr. Carroll to serve as a homestay host. Mrs. Carney is a lifelong Edinburgh resident. Carney Depo. at 5.[1] She was unaware of Ambassador's Guidelines, as someone at EIL failed to communicate them to her. However, she has been an EIL volunteer continuously since 1994. *Id.* at 7. She has served as a homestay host for the past 15 years. *Id.* at 8. She personally visited Mr. Carroll's home and spoke with him. She found him to be very pleasant and noted that his house was tidy and clean. *Id.* at 12. In deciding whether a person would be a suitable homestay host, Mrs. Carney decides whether her own son (who is Joel's age) would be safe in the house. She had absolutely no reservations about Mr. Carroll serving as a host. She never thought a trip participant would be endangered, injured, or put in an unreasonable risk of harm by staying with Mr. Carroll. *Id.* at 14 & 21.

After Joel tried suicide, the matter was forwarded to Andrew Ferguson, a detective constable with the Edinburgh Police Force. Ferguson Aff. ¶¶ 2 & 4 (attached as Exh. A). Detective Ferguson conducted a detailed criminal investigation. He interviewed and eventually obtained a statement from Joel. Ferguson Aff. ¶¶ 9 & 12. He then searched the Scottish National Police computer, but Mr. Carroll had no convictions. He searched the Sexual Offenders Register, but nothing came up. He checked with Scottish criminal intelligence to see if the police had any information on Mr. Carroll, but again the search turned up nothing. In short, Mr. Carroll had a clean record. Ferguson Aff. ¶ 13; Order at 35.

Detective Ferguson and another detective then detained Mr. Carroll. They took him to the police station and interviewed him. Ferguson Aff. ¶ 14. Mr. Carroll denied sexually

---

[1] The parties perpetuated Mrs. Carney's testimony on December 2, 2003. A copy of her deposition will be mailed to the clerk the same day Ambassador electronically files this memo.

assaulting Joel Moyer or any other person who stayed with him. Ferguson Aff. ¶ 15. Because there was no evidence supporting Joel's allegation, Mr. Carroll was released and never charged. Ferguson Aff. ¶¶ 16-17.

Mr. Carroll has always denied the Moyers' allegations. They Moyers have never sued him – either in Scotland or in the United States. Order at 8.

### B.    Ambassador committed no willful or wanton misconduct

Willful conduct "involves an intent, purpose or design to injure." *Clutter v. Karshner*, 2001 U.S. App. Lexis 19094 at *10, n. 3 (6th Cir.) (attached as Exh. B) (quoting *Glandon v. Greater Cleveland Regional Transit Authority*, 75 Ohio St. 3d 312, 662 N.E.2d 287, 293 (1996)).

Wanton misconduct is a failure to use *any care* under conditions that in all probability will result in injury." *Justice v. Marion County Sheriff's Department*, 2000 U.S. App. Lexis 498 at *18-19 (6th Cir.) (attached as Exh. C).

The Sixth Circuit and other courts have granted a defendant summary judgment because the plaintiff could not meet the high burden of showing willful or wanton misconduct. In each case, the court held the defendant acted negligently at best. *Clutter*, 2001 U.S. Lexis 19094 at *12-13 (race track operator didn't put rail system around track despite several prior accidents); *Justice*, 2000 U.S. App. Lexis 498 at *18-19 (deputy drank alcohol and left loaded gun on kitchen counter); *Evans v. Ohio State University*, 112 Ohio App.3d 724, 749, 680 N.E.2d 161, 177 (1996) (county extension officer failed to disclose to 4-H advisors that goat expert whom extension office had hired as fair judge had prior conviction for gross sexual imposition and corruption of a minor).

Ambassador and EIL had no intent, purpose or design to injure Joel. Thus, there would be no genuine issue of material fact and Ambassador would prevail on summary judgment on the Moyers' willful misconduct allegation.

Ambassador would also win on the wanton misconduct allegation. Ambassador and EIL exercised some care to Joel. Ambassador's Pamela Duckmanton twice communicated the Guidelines to EIL. EIL's Frances Carney met with Mr. Carroll in his home and determined he would be a suitable host. She would have let her own son (who's Joel's age) stay with Mr. Carroll. Also, just because Mr. Carroll was single and had no kids does not mean "in all probability" Joel would be injured. A married female or married male could have kissed and groped Joel. Despite what the Moyers implicitly argue, not all single males are sexual deviants. Most important, unlike the perpetrator in *Evans*, Mr. Carroll had (and still has) no criminal record. If the defendants weren't liable in *Evans*, then Ambassador certainly can't be liable here.[2]

### A.    The Moyers are not entitled to punitive damages

In Ohio, a plaintiff is not entitled to punitive damages unless he or she proves by clear and convincing evidence that the defendant acted maliciously, with ill will, in bad faith, or in reckless disregard for the rights and safety of others. Ohio Rev. Code § 2315.21. As noted above, Ambassador would be entitled to summary judgment on the Moyers' proposed willful/wanton misconduct claim. They likewise would be entitled to summary judgment on the punitive damages issues – even without considering the elevated burden of proof required by Ohio law.

---

[2]    The Moyers also allege that Ambassador acted recklessly. The Ohio Supreme Court equates "reckless" with "willful" and "wanton." *Thompson v. McNeil*, 53 Ohio St.3d 102, 104, 559 N.E.2d 705, 708, n. 1 (1990).

### III.   CONCLUSION

Ambassador concedes, in light of the Court's summary judgment order, that there is an issue of fact whether Ambassador or EIL was negligent.  However, there is no issue whether Ambassador acted willfully or wantonly.  It didn't.  Because Ambassador would be entitled to summary judgment on the Moyers' proposed additional claim and punitive damages request, the Court should deny their motion for leave to amend.

Respectfully submitted,

/s/ Martin A. Beyer
Martin A. Beyer (Trial Attorney) (0060078)
Robert G. Hanseman  (0071825)
Sebaly Shillito + Dyer
A Legal Professional Association
1900 Kettering Tower
Dayton, OH 45423
937/222-2500
937/222-6554 (fax)
mbeyer@ssdlaw.com
Attorneys for Defendant Ambassador Programs, Inc.

### CERTIFICATE OF SERVICE

I certify that on May 24, 2004, a copy of **Defendant Ambassador Programs, Inc.'s Memorandum Opposing Plaintiffs' for Leave to File Third Amended Complaint** was served, both electronically and via U.S. mail, on the following:

| | |
|---|---|
| Louis F. Gilligan, Esq. | Gregory G. Beck, Esq. |
| Peter J. Stautberg, Esq. | KREINER & PETERS CO. L.P.A. |
| Keating, Muething & Klekamp, PLL | 2055 Reading Road, Ste. 290 |
| 1400 Provident Tower | Cincinnati, OH 45202 |
| One East Fourth Street | (513) 241-7878 |
| Cincinnati, OH 45202 | Attorney for Defendant Humana/Choice |
| 513/579-6400 | |
| Attorneys for Plaintiffs | |

/s/ Martin A. Beyer
Martin A. Beyer