*2001 U.S. App. LEXIS 19094, \**

GAIL CLUTTER and TREVA CLUTTER, Plaintiffs-Appellants, v. ELEANOR KARSHNER, d/b/a K-C Raceway, K-C RACEWAY, INC., and DAVID KARSHNER, Defendants-Appellees.

No. 99-4307

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

2001 U.S. App. LEXIS 19094

EXHIBIT
B

August 20, 2001, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO. 97-00059. Sargus Jr. 09-24-99.

**DISPOSITION:** AFFIRMED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff appealed a ruling of the United States District Court for the Southern District of Ohio which dismissed all of plaintiff race car driver's claims of negligence, and which also concluded that plaintiff could not support his claims for wanton and willful misconduct as a matter of law.

**OVERVIEW:** Plaintiff brought this action after suffering severe injuries while auto-racing at defendant's raceway. He alleged that his injuries were a result of defendants' failure to construct and maintain a rail system around an elevated turn. On appeal, the court concluded that plaintiff was unable to support a claim for wanton and willful misconduct. Further, he did not have a viable negligence claim. The district court had found that plaintiff's negligence claim was barred by the release that he signed prior to entering the track. It dismissed the willful and wanton misconduct theory because plaintiff failed to raise an issue of material fact as to whether or not the lack of guardrails amounted to willful and wanton misconduct. The appellate court agreed with the district court that the release was valid and effectively extinguished the negligence claim. The appellate court also concluded that plaintiff did not present evidence sufficient to create a genuine issue of material fact as to whether defendant failed to exercise any care whatsoever in circumstances in which there was a great probability that harm would result.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** willful, track, wanton, wanton misconduct, proprietor, probability, genuine issue of material fact, negligence claim, summary judgment, reckless, correspondence, matter of law, railing, hazard, rail, willful misconduct, non-moving, rushed, serious injury, guardrail, favorable, elevated, driving, notice, appropriate standard, moving party, interchangeably, misconduct, indemnity agreement, failed to raise

### LexisNexis (TM) HEADNOTES - Core Concepts - ♦ Hide Concepts

Civil Procedure > Appeals > Standards of Review > De Novo Review
*HN1* The appellate court reviews a district court's grant of summary judgment de novo. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN2* Summary judgment is appropriate if there is no genuine issue of material fact and the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party. In order to determine whether an issue of fact is genuine and material, the court must decide whether the evidence is such that reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict, or whether the evidence is so one-sided that the moving party must prevail as a matter of law. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Choice of Law
HN3± Where the case arises out of diversity jurisdiction, the court must apply the substantive law, including choice of law rules, of the state in which the district court sits. The appellate court reviews the district court's application of substantive state law de novo. Where the relevant state law is unsettled, the court must use its best judgment as to how the highest state court would rule if faced with the same case. More Like This Headnote

Torts > Negligence > Defenses > Exculpatory Clauses
HN4± Ohio law permits stock-car participants and proprietors to contract in such manner so as to relieve the proprietor of responsibility to the participant for the proprietor's negligence, but not for the proprietor's willful or wanton conduct. More Like This Headnote

Torts > Negligence > Negligence Generally
HN5± The Ohio Supreme Court has continued to distinguish between the "reckless" and "willful" and "wanton" standards in the context of claims between participants and proprietors of recreational facilities. More Like This Headnote

Torts > Negligence > Negligence Generally
HN6± Wanton conduct has two parts: (1) failing to exercise any care whatsoever toward those to whom one owes a duty of care, and (2) the failure occurs under circumstances in which there is great probability that harm will result. More Like This Headnote

Torts > Negligence > Negligence Generally
HN7± The failure to act despite notice of a dangerous condition may certainly rise to the negligence standard, but it does not necessarily rise to the higher standard of willful and wanton misconduct. More Like This Headnote

**COUNSEL:** For GAIL E CLUTTER, Plaintiff - Appellant: Richard Manley Lewis, Cole & Lewis, Jackson, OH.

For GAIL E CLUTTER, Plaintiff - Appellant: Robert Q. Sayre, Jr., Charleston, WV.

For ELEANOR KARSHNER, K-C RACEWAY INC., DAVID KARSHNER, Defendants - Appellees: Donald L. Anspaugh, David G. Jennings, Isaac, Brant, Ledman & Teetor, Columbus, OH.

**JUDGES:** Before: MARTIN, Chief Judge; MOORE, Circuit Judge; TARNOW, * District Judge.

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

**OPINIONBY:** ARTHUR J. TARNOW

**OPINION:** *ARTHUR J. TARNOW.* Gail Clutter brought this action after suffering severe injuries while auto-racing at K-C Raceway. Clutter shattered [*2] his back after driving his car off of an elevated turn. He filed suit, alleging that his injuries were a result of the defendants' ("Karshners'") failure to construct and maintain a rail system around the elevated turn. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Treva Clutter, Gail's wife, and their children also brought claims for severe emotional distress and loss of consortium. The District Court denied summary judgment on these claims. These claims are not before the Court on this appeal.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Following the Karshners' motion for summary judgment, the district court dismissed all of Clutter's claims of negligence. The district court also concluded that Clutter could not support his claims for wanton and willful misconduct as a matter of law. Pursuant to Federal Rule of Civil Procedure 54(b), Clutter appeals the district court's ruling.

Assuming all of the facts in the light most favorable to Clutter, we believe that he is unable to support a claim for wanton and willful misconduct. Further, he does not have a viable negligence claim. We **AFFIRM [*3]** the district court's judgment.

## II. Background

Clutter has been involved in the mechanical aspects of automobile racing since 1975. His experience behind the wheel, however, was limited. He began driving in 1996 and had raced approximately fourteen times on only two race tracks prior to the day of the accident. Clutter had never raced on the 3/8 mile oval dirt track owned by the Karshners.

On June 15, 1996, Clutter and his family arrived at K-C Raceway in the early evening. After waiting in line for one hour, Clutter approached the sign-in booth. There he paid a fee and signed, without reading, a document entitled "Release and Waiver of Liability and Indemnity Agreement." As the title indicates, the document contained a release of liability, an express assumption of risk, an indemnity agreement, and a covenant not to sue.

The track has a concrete retaining wall around turn one and a guardrail around turn two. Turns three and four lack rails, are elevated 17.6 degrees, and have a 9 1/2 foot drop on the other side. While driving on the second lap of a heat race, Clutter lost control of his vehicle and flew off of the track at turn three. The car rolled several times, rendering **[*4]** Clutter paraplegic.

Clutter and his family filed a lawsuit against K-C Raceway, claiming that the proprietors of the track acted negligently, willfully, and wantonly by failing to install guardrails around turns three and four in light of the dangerous characteristics of those turns. The district court was unconvinced by Clutter's theory and granted, in part, the Karshners' motion for summary judgment.

The district court found that Clutter's negligence claim was barred by the release that he signed prior to entering the track. The court dismissed the willful and wanton misconduct theory because Clutter failed to raise an issue of material fact as to whether or not the lack of guardrails amounted to willful and wanton misconduct. In reaching this conclusion, the district court first resolved a dispute regarding insurance correspondences in favor of the Karshners. The court next determined that the expert testimony of H. Boulter Kelsey could not create a genuine issue of material fact. Clutter's evidence of prior accidents at the track also failed to raise an issue of fact. Finally, the district court held that while the evidence of the design of the track might prove negligence on **[*5]** defendants' part, it was legally insufficient to prove willful or wanton misconduct. The district court also held that Clutter did not primarily assume the risk of his injury.

## III. Standard of Review

**HN1** We review a district court's grant of summary judgment *de novo. Pride v. BIC Corp.*, 218 F.3d 566, 575 (6th Cir. 2000). **HN2** Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party." *Pride*, 218 F.3d at 575 (internal citation omitted). In order to determine whether an issue of fact is genuine and material, we must decide "whether the evidence is such that reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict, or whether the evidence is so one-sided that the [moving party] must prevail as a matter of law." *Id.* (internal quotation omitted).

**HN3** Because this case arises out of diversity jurisdiction, we must apply the substantive **[*6]** law (including choice of law rules) of the state in which the district court sits, which in this case is Ohio. *Jim White Agency Co. v. Nissan Motor Corp.*, 126 F.3d 832, 835 (6th Cir. 1997). We review the district court's application of substantive Ohio law *de novo. Id.* Where the relevant state law is unsettled, we must use our "best judgment

as to how the Ohio Supreme Court would rule if faced with the same case. Id.

Case 1:01-cv-00140-TSH    Document 120-3    Filed 06/23/2004    Page 4 of 6

## IV. Analysis

A. Release

Clutter argues that the release he signed before racing was invalid. Thus, he claims, the district court's dismissal of the negligence claim premised on the validity of the release was erroneous. According to Clutter, there was no meeting of the minds when the release was signed. He never read the language of the document; he felt rushed to sign it; and the K-C Raceway representative manning the sign-in booth was poorly informed as to the document's effect. These factors, according to Clutter, make this case analogous to Harsh v. Lorain County Speedway, 111 Ohio App. 3d 113, 675 N.E.2d 885 (Ohio App. 1996), in which the state court found a question of fact as to whether a meeting of [*7] the minds occurred when the plaintiff signed a similar waiver.

The Karshners contend that Ohio law supports the validity of releases such as that at issue in this case and claim that Harsh is an outlying case that is inconsistent with the majority of Ohio decisions on the matter. In addition, the Karshners contend that Harsh can be distinguished from the present case because, in Harsh, the plaintiff was given no time to read the multipurpose document; he was a non-participant in the race; the document he signed was partially obscured; and he did not understand the consequence of signing.

We agree with the district court that the release was valid and effectively extinguished Clutter's negligence claim. HN4 Ohio law permits stock-car participants and proprietors to contract "in such manner so as to relieve the proprietor of responsibility to the participant for the proprietor's negligence, but not for the proprietor's willful or wanton conduct." Bowen v. Kil-Kare, 63 Ohio St. 3d 84, 585 N.E.2d 384, 390 (Ohio 1992).

In Bowen, the Ohio Supreme Court overruled the lower court's grant of summary judgment for the racetrack, reasoning that an issue of disputed [*8] fact remained regarding whether the release was properly signed and executed. The Bowen court found it significant that the plaintiff was simply given a blank sheet with three columns to sign without the terms of the waiver. In this case, the release was set out in clear terms and presented to Clutter. Clutter chose not to read the terms. While Clutter felt rushed to sign, and perhaps did not understand the gravity of the release, he was not rushed by anyone representing K-C Raceway. Clutter chose not to inform himself of the release's parameters, despite having the opportunity to do so. Thus, the district court correctly dismissed Clutter's negligence claim.

B. Reckless or willful and wanton

Clutter next argues that Ohio courts now use a reckless misconduct standard interchangeably with a willful and wanton standard. According to Clutter, even though his negligence claim was rejected, we may still analyze his claims based on a reckless misconduct standard as expressed in Thompson v. McNeill, 53 Ohio St. 3d 102, 559 N.E.2d 705, 708 (Ohio 1990). In Thompson, the Ohio Supreme Court determined that participants in a sporting event may sue each other [*9] for reckless or intentional torts, but not negligence. Thompson, 559 N.E.2d at 706. In the opinion, the court remarked that "the term 'reckless' is often used interchangeably with 'willful' and 'wanton.'" Id. at 708 n.1. n2 Clutter reasoned that this language was an intentional merging of the standards in this context.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Subsequent to the decision, there has been some conflation of these standards in the lower courts. See, e.g., Simmons v. American Motorcyclist Assoc., 69 Ohio App. 3d 844, 591 N.E.2d 1322, 1324 (Ohio App. 1990).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Despite its holding in Thompson, HN5 the Ohio Supreme Court has continued to distinguish between these standards in the context of claims between participants and proprietors of recreational facilities. In Zivich v. Mentor Soccer Club, 82 Ohio St. 3d 367, 696 N.E.2d 201, 207 (Ohio 1998), the court applied the willful and wanton standard to a suit between a youth soccer player and the soccer club. Zivich, like the present case, [*10] involved a participant and a proprietor. Consequently, Zivich is more closely analogous to the issues

facing us than is *Thompson*, which involved two players. We conclude that pursuant to *Zivich*, the appropriate standard in the present case is willful and wanton and affirm the district court as to the appropriate standard.

*C. Willful and Wanton Misconduct*

We analyze Clutter's remaining claim under the wanton misconduct standard, because there is no evidence that would establish willful misconduct as defined by the Ohio Supreme Court. n3 <sup>HN6</sup>Wanton conduct has two parts: (1) failing to exercise any care whatsoever toward those to whom one owes a duty of care (2) the failure occurs under circumstances in which there is great probability that harm will result. *Gladon v. Greater Cleveland Regional Transit Authority*, 75 Ohio St. 3d 312, 662 N.E.2d 287, 294 (1996).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 Willful conduct "involves an intent, purpose or design to injure." *Gladon v. Greater Cleveland Regional Transit Authority*, 75 Ohio St. 3d 312, 662 N.E.2d 287, 293 (1996).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*11]

Clutter argues that there is a genuine issue of material fact regarding whether the Karshners' conduct was willful and wanton if we consider all of the evidence, including that excluded by the district judge. n4 First, Clutter contends that correspondence regarding the track's insurance coverage raises an issue, because the insurance company arguably informed the Karshners that turns three and four required rails. The district court determined that this correspondence between K&K and the Karshners did not refer to the turns at issue in this case. In reaching this conclusion, the district court relied on notions of sound business (K&K reinsured the company without the repairs) and the credibility of defense witnesses.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 However, we cannot consider evidence excluded by the district court unless its exclusion is the issue specifically raised.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

We find that the district court made this determination in error. Numerous letters between K&K and the Karshners indicate that rails should have been added to turn three. [*12] There is also evidence that the Karshners certified that the alterations had been made. While there is other evidence indicating that such rails would serve a purpose other than the protection of racers, Clutter has raised a genuine issue of material fact as to these communications between the Karshners and K&K.

The insurance correspondence goes to the first prong of the willful and wanton misconduct analysis: whether or not the Karshners exercised care toward race participants. However, Clutter must still demonstrate that the Karshners' failure to exercise care occurred under circumstances in which there was a great probability that harm would result. We find that Clutter is unable to meet this high standard.

For evidence regarding the probability of harm, Clutter offered the race track's history of accidents at turns three and four. After reviewing the evidence, the district court found that while cars exited the turns every night, these accidents seldom resulted in serious injury. The district court concluded that the history of accidents may tend to prove the existence of negligence on defendants' part, but it was insufficient as a matter of law to support a claim of willful [*13] and wanton misconduct.

Clutter contends that there is evidence that other drivers have exited the track at turn three and suffered serious injury. The Karshners respond by noting that the types of cars involved in the accidents were faster and lighter than the car driven by Clutter. Further, there is a greater danger of serious injury at the turns which have railings. Eleanor Karshner indicated that during her involvement with the track, there were more injuries and more damage to vehicles caused by the concrete barriers.

The Ohio Supreme Court has held that a defendant's failure to remedy a hazard when he had knowledge of it was not willful and wanton misconduct. In *Zivich*, the court determined that the president of a soccer team was not liable under the willful and wanton standard for injuries incurred by a young man who was struck by

an unanchored goal post because the president was unaware of any prior injuries resulting from the hazard. The president's knowledge that the goal post was unanchored, therefore, was insufficient to raise a material issue of fact that the president acted wantonly by failing to remedy the hazard. Although *Zivich* is distinguishable from the **[*14]** present case in that there have been injuries on turns three and four, the case advances the principle that *HN7* the failure to act despite notice of a dangerous condition may certainly rise to the negligence standard, but it does not necessarily rise to the higher standard of willful and wanton misconduct.

In this case, the Karshners had notice that railings might prevent cars from exiting turns three and four. Their failure to construct the railing, however, does not establish that there was evidence of a great probability of harm. There is undisputed testimony that more serious accidents happened in the corners with railings and a wall. It is also undisputed that the great majority of incidents at turns three and four result in little or no injury. In this sense, the Karshners are similar to the president of the soccer team in *Zivich*. They had notice of a condition that may be dangerous on their racetrack. However, the hazard did not constitute a circumstance from which there was a great probability that harm would result.

## V. Conclusion

Although the district court erred by not considering the insurance correspondence in the light most favorable to the non-moving party, **[*15]** Clutter did not present evidence sufficient to create a genuine issue of material fact as to whether Karshner failed to exercise any care whatsoever in circumstances in which there was a great probability that harm would result.

For the above reasons, we AFFIRM the judgment of the district court.

Service: **Get by LEXSEE®**
Citation: **2001 us app lexis 19094**
View: Full
Date/Time: Monday, May 24, 2004 - 4:56 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.