**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(Cincinnati)**

| | | |
|---|---|---|
| JOEL P. MOYER, et al. | : | CASE #  1:01-CV-140 |
| | : | |
| Plaintiffs, | : | Magistrate Judge Timothy S. Hogan |
| | : | |
| v. | : | |
| | : | DEFENDANT AMBASSADOR |
| AMBASSADOR PROGRAMS, INC., et al. | : | PROGRAMS, INC.'S REPLY MEMORANDUM IN SUPPORT OF |
| | : | ITS MOTION FOR PARTIAL |
| Defendants. | : | SUMMARY JUDGMENT |

## I.     INTRODUCTION

Unable to muster any facts supporting their accusations that Ambassador had a "callous attitude" and a "conscious disregard" for trip participants, and unwilling to address the case law cited by Ambassador, the Moyers resort to hyperbole.  But hyperbole cannot stave off summary judgment on their punitive damages request.  Only facts can.  And there absolutely no evidence of a great probability that Ronnie Carroll would kiss and grope Joel Moyer after Mr. Moyer improperly drank alcohol at a local tavern.   Mr. Carroll had, and still has, no criminal record.

As set forth below, the Court should grant Ambassador summary judgment on count five of the Moyers' third amended complaint.

{00122580.DOC/1}

II.   **THE MOYERS ARE NOT ENTITLED TO PUNITIVE DAMAGES**

   A.   **Summary judgment and punitive damage standards**

A party responding to a properly supported summary judgment motion, has the burden of presenting "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 250 (1986)) (quoting Fed. Civ. Rule 56(e)). The opposing party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 476 U.S. 574 586 (1986).

Punitive damages are not intended to compensate the victim. Rather, they "are intended to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable." *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473, 575 N.E.2d 416, 419 (1991) (quoting *Preston v. Murty*, 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, 1176 (1987)). To reap a punitive damage windfall, a plaintiff must show that the defendant acted with malice. Ohio Rev. Code § 2315.21(B)(1). The burden of proof is very high – clear and convincing evidence. *Id.* at § 2315.21(C)(3). Malice is defined as: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston*, 32 Ohio St.3d 334, 515 N.E2d 1174, syllabus. The Moyers concede that Ambassador did not act with hatred, ill will, or a spirit of revenge.

Ohio law does not allow a separate legal claim for punitive damages. Rather, a request for punitive damages may be made only in conjunction with a request for compensatory damages on another claim – in other words, on another count of the complaint. *Bishop v. Grdina*, 20 Ohio St. 3d 26, 485 N.E.2d 705 (1985).

In count five of their third amended complaint, the Moyers seek compensatory and punitive damages on their claim for willful and wanton misconduct. In its motion for partial summary judgment, Ambassador set forth Sixth Circuit and Ohio law addressing that claim. Motion at 8-9. The Moyers did not address Ambassador's case law or supply any evidence that Ambassador acted willfully or wantonly. They merely supplied evidence in support of their damage request. Thus, the Moyers did not meet their reciprocal burden under Rule 56. *Anderson*, 477 U.S. at 250. The Court should grant the Moyers summary judgment on this basis alone.

> **B.     Ambassador and/or EIL did not act with a conscious disregard for Mr. Moyer's safety with a great probability of causing him substantial harm**

Even if the Court should consider the Moyers' arguments regarding punitive damages, it should still grant Ambassador summary judgment for two reasons: (1) neither Ambassador nor EIL acted with a conscious disregard for Joel Moyer's safety; and (2) there was no great probability of causing substantial harm.

> **1.     There was no conscious disregard for Joel Moyer's safety**

Ambassador did not throw Mr. Moyer to the wolves. It contracted with EIL, a highly respected homestay organization. Ambassador's Ralph Baard was asked about EIL:

> Q:     Before you entered into the agreement with EIL UK in regards to the student ambassador program that Joel Moyer went on, what investigation did you or your company do on EIL, specifically in regard to determining whether or not the type of host that they would provide for the host would create a safe environment for the students that were going to be staying with these hosts?
>
> A:     Well, EIL had contacted us over a period of time on several occasions to try and do programs with us, and during these contact stages they had provided a number of excellent references to organizations they had worked with in the past as well as that they are a member of FYITO, which is a youth travel oversight organization. Anybody who is a member of that has been screened by them and has to comply to some degree in terms of safety and financial backing and so on to be a member of the organization. Not just anybody can belong to it. So it

> provides some credentials for their organization, for them as an organization. They also have been arranging home stays for over 60 years, so they have [an] incredible amount of experience for, you know, back home experience in arranging home stays, and as such we look to them as being the – you know, they are probably the premier home stay provider on the planet today.

Baard Depo. II at 84-85.

During EIL's visit to Ambassador headquarters in Spokane, Washington, Ambassador's Pamela Duckmanton went over the company's guidelines with the EIL representatives. Those guidelines, among other things, encourage overseas vendors to place travelers with "host families" – that is, with married couples or with single adults who have children roughly the same age as trip participants. Duckmanton Aff. (attached as Exh. A) ¶ 5. Ambassador sent Ms. Duckmanton on a "look and see" trip to the United Kingdom in early 1999. She traveled to the destination spots and met with EIL representatives. She again explained Ambassador's guidelines regarding home stays. Duckmanton Aff. ¶ 6; Baard Depo. II at 86.

The Moyers pick on Ms. Duckmanton for not knowing that EIL UK and EIL Ireland are separate legal entities. Nevertheless, EIL Ireland and EIL UK have a close connection with the work they do and they are both part of the EIL federation. Shaddick Aff. (attached as Exh. B) ¶¶ 3&4.

Judge Weber held that Ambassador could be liable for EIL's selection of Mr. Carroll to serve as a homestay host. SJO at 22-23. Nevertheless, EIL did not act with conscious disregard for Joel Moyer's safety. EIL's Frances Carney selected Mr. Carroll to serve as a homestay host. Mrs. Carney is a lifelong Edinburgh resident. Carney Depo. at 5. She has been an EIL volunteer continuously since 1994. *Id.* at 7. She has served as a homestay host for the past 15 years. *Id.* at 8. She personally visited Mr. Carroll's home and spoke with him. She found him to be very pleasant and noted that his house was tidy and clean. *Id.* at 12. Based on her experience and

interview, Ms. Carney determined that Mr. Carroll would be a suitable host. Mr. Carroll had previously hosted eight to ten trip participants without incident. SJO at 5; Carroll Depo. at 11. In deciding whether a person would be a suitable homestay host, Mrs. Carney considers whether her own son (who is Joel's age) would be safe in the house. She had absolutely no reservations about Mr. Carroll serving as a host. She never thought a trip participant would be endangered, injured, or put in an unreasonable risk of harm by staying with Mr. Carroll. *Id.* at 14 & 21. If she had, she would not have selected him as a homestay host. *Id*. at 13.

The Moyers' cases are readily distinguishable because the defendants in those cases *knew and ignored* a specifically known danger. *Cabe v. Lunich*, 70 Ohio St.3d 598, 640 N.E.2d 159 (1994) (defendant admitted that drinking alcohol before driving was reckless); *Barker v. Netcare Corporation*, 147 Ohio App.3d 1, 768 N.E.2d 698 (2001) (defendant knew that physically restraining a rape victim would add to her distress); *Wilkins v. Ondrovich*, 118 Ohio App.3d 93, 691 N.E.2d 1122 (1997) (defendant realtor knew of plaintiff's distressed mental state, yet he still started a fight with her son and coerced her into selling house for artificially low price); *Doe v. White*, 97 Ohio App.3d 585, 647 N.E.2d 198 (1994) (mental health worker gained plaintiff's confidence and duped her into having sex).

Here, as noted below, there was no known danger. Mr. Carroll had no criminal propensity. It is true that Ambassador's guidelines unfortunately were not followed. Nevertheless, neither Ambassador nor EIL acted with conscious disregard for Mr. Moyer's safety. Mrs. Carney, who made the actual decision regarding Mr. Carroll, had years of experience in selecting homestay hosts, applied a high standard in selecting hosts, and in good faith believed that Mr. Carroll would be a fine host.

   **2.**   **There was no great probability of causing substantial harm**

Ohio law requires more than a possibility or a probability that one will be harmed. Rather, there must be a great probability of substantial harm. *Calmes*, 61 Ohio St.3d at 474, 575 N.E.2d at 420 ("mere foreseeability cannot be equated with great probability.")

A defendant is not liable for a third-party's criminal act against a minor when the defendant has no knowledge of the perpetrator's criminal propensities. *Evans v. Ohio State University*, 112 Ohio App.3d 724, 740, 680 N.E.2d 161, 171 (1996) (cited in Ambassador's motion) (county extension officer failed to disclose to 4-H advisors that goat expert whom extension office had hired as fair judge had prior conviction for gross sexual imposition and corruption of a minor). See also, *Steppe v. Kmart Stores*, 136 Ohio App.3d 454, 737 N.E.2d 58 (1999) (employer not liable for employee's sexual assault on minor co-employee because employer had no knowledge of employee's criminal propensities); *Whitt v. Country Club Apartments,* 1999 Ohio App. Lexis 3573 (attached as Exh. C) (court upheld summary judgment to apartment complex because maintenance worker's sexual assault of minor was not anticipated); *Peters v. Ashtabula Metropolitan Housing Authority*, 89 Ohio App.3d 458, 462, 624 N.E.2d 1088, 1091 (1993) ("In the absence of known criminal propensity, this [sexual assault of a minor] was not reasonably foreseeable and cannot be attributed to any act or omission by [the defendant]").

While Judge Weber held that Ambassador should have anticipated a "*possibility* of harm" to Mr. Moyer, SJO at 20 (emphasis added), he never held that there was a *great probability* of substantial harm. Nor did he address the above-mentioned case law.

Here, there simply was no great probability of substantial harm. Neither Ambassador nor EIL knew of any criminal propensities because Mr. Carroll had none. Scottish Detective Ferguson conducted a detailed criminal investigation. He interviewed and eventually obtained a

statement from Joel Moyer.  Ferguson Aff. (attached as Exh. D) ¶¶ 9 & 12.  He then searched the Scottish National Police computer, but Mr. Carroll had no convictions.  He searched the Sexual Offenders Register, but nothing came up.  He checked with Scottish criminal intelligence to see if the police had any information on Mr. Carroll, but again the search turned up nothing.  Detective Ferguson personally interviewed Mr. Carroll and did not charge him because there was no evidence supporting Joel Moyer's allegations.  Ferguson Aff. ¶¶ 16-17.  Thus, Mr. Carroll has always had a clean record – both before and after the trip.  Ferguson Aff.  ¶ 13; SJO at 8.  Because Mr. Carroll had no known propensities, there was no great probability of substantial harm as a result of Joel Moyer and Dan Kelley's placement with Mr. Carroll.

### III.    CONCLUSION

In short, there was not willful or wanton misconduct.  There was no conscious disregard for Joel Moyer's safety.  There was no great probability of substantial harm.  The Court should grant Ambassador summary judgment on Plaintiffs' claim for willful and wanton misconduct (count 5) and on their request for punitive damages.

Respectfully submitted,

s/ Martin A. Beyer
Martin A. Beyer (Trial Attorney) (0060078)
Robert G. Hanseman   (0071825)
Sebaly Shillito + Dyer
A Legal Professional Association
1900 Kettering Tower
Dayton, OH 45423
937/222-2500
937/222-6554 (fax)
mbeyer@ssdlaw.com
Attorneys for Defendant Ambassador Programs, Inc.

## CERTIFICATE OF SERVICE

I certify that a copy of **Defendant Ambassador Programs, Inc.'s Reply Memo Supporting its Motion for Partial Summary Judgment** was served electronically and via U.S. mail to:

Louis F. Gilligan, Esq.
Peter J. Stautberg, Esq.
Keating, Muething & Klekamp, PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202
513/579-6400
Attorneys for Plaintiffs

and via U.S. mail to:

Gregory G. Beck, Esq.
KREINER & PETERS CO. L.P.A.
2055 Reading Road, Ste. 290
Cincinnati, OH 45202
(513) 241-7878
Attorney for Defendant Humana/Choice

on August 11, 2004.

s/ Martin A. Beyer
Martin A. Beyer
