IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
(Cincinnati)

| | | |
|---|---|---|
| **JOEL MOYER, et al.,** | : | CASE NO. C-1-01-140 |
| Plaintiffs, | : | Judge Herman J. Weber |
| v. | : | |
| **PEOPLE TO PEOPLE INTERNATIONAL, INC., et al.,** | : | |
| Defendants. | : | |

At Edinburgh on the Twentyfourth day of December 2002 in the presence of Katrina Louise Lumsdaine, Notary Public of Exchange Tower, 19 Canning Street, Edinburgh EH3 8EH **APPEARED** ANDREW ROBERT FERGUSON, age 38 years, Detective Constable of Drugs and Major Crime Unit, Lothian & Borders Police, Police Headquarters, Fettes Avenue, Edinburgh, EH4 1RB, who being solemnly sworn and examined states as follows:

1. My full name is Andrew Robert Ferguson. My date of birth is 18th February 1964. I am 38 years of age. I can be contacted through my employers, The Drugs & Major Crime Unit, Lothian & Borders Police, Police Headquarters, Fettes Avenue, Edinburgh, EH4 1RB at 0131 311 3181. My fax number is 0131 311 3215. My mobile telephone number is 07967 369 971. My e-mail address is andrew.ferguson@lbp.pnn.police.uk

{00052282.DOC/2}
Deponent

Notary Public
KLL/SEB.1.62180

EXHIBIT D

2. I was employed by Lothian & Borders Police Force as a Constable on 20th February 1989. I was promoted to the CID Branch of the Police Force in or around 1996. CID stands for Criminal Investigation Department. I have been working for Lothian & Borders CID ever since, where I am a Detective Constable.

3. In or around August 2001 Lothian & Borders Police Headquarters at Fettes Avenue in Edinburgh received a letter from a Police Force in England. I cannot remember which Police Force it was. I think it may have been Manchester, although I am not sure. Headquarters allocated the investigation of this matter to me, and the letter was therefore passed to me.

4. The letter from the Police Force in England advised that they had received a letter from an English company. I cannot remember the name of the English company. I think it may have been People to People although I am not sure. I can't remember if there was any mention of a company called EIL or Experiment in Living. A company in America had received intimation that a civil action had been raised on the basis of an alleged sexual assault by a Scottish individual, Ronald Carroll, living in Edinburgh against an American boy, Joel Moyer. The company who had written to the Police in England appeared to be a subsidiary of an American company who were being sued in respect of this allegation. However, I am not entirely sure on this. The English company explained that the American company was keen that the Police be aware of what was alleged to have happened and take appropriate action.

{00052282.DOC/2}

.......................................................
Deponent

.......................................................
Notary Public

KLL/SEB.1.62180

5. When I got the letter I phoned the local police office in England that sent the letter and asked them for any documents which they had in relation to this matter. They explained that they held no documentation as no statements, etc. had been taken by them. They were aware that this was an Edinburgh matter and had therefore passed it up to us. The document which they did hold was the copy of the suicide letter by Joel Moyer, which they agreed to forward to me.

6. Thereafter, I phoned the English company who had notified my English colleagues. I am not sure the name of the company. When I phoned them I spoke to management by telephone. It was a man that I spoke with. I cannot remember his name but he had an English accent. The man explained that it was their business to place children in student exchange trips with host families. He explained that as a result of a lawyer's letter he had become aware that there were allegations of a sexual assault which was alleged to have taken place with one of the host families in Edinburgh. They gave me the details of a female in Edinburgh. She appeared to be an employee of the Scottish subsidiary of the English company, and the man gave me her phone number.

7. I phoned the woman whom I understood to be an employee of the English company. She sounded around 40 years of age and had a local Edinburgh accent. I cannot remember her name. She told me that she dealt with the Edinburgh side of the operation on behalf of the English company. She explained that she placed an advertisement in The Evening News, the local

{00052282.DOC/2}

_____
Deponent

_____
Notary Public

KLL/SEB.1.62180

Edinburgh paper, asking people to apply to be hosts. She explained that various people applied and they therefore arranged for students to go and stay with those who had applied. I asked her whether or not she had any paper work. She explained that Mr Carroll was no longer a host for them and because of the time delay his file had been destroyed. As a result there was no file or any paper work available.

8. All that I had to go on was the suicide note which consisted of a letter by Joel Moyer to his parents and brother.

9. The next investigation which I undertook was to contact Mr. Moyer senior and also Joel Moyer himself, both in the United States. I made them aware that I was inquiring into the allegations. I spoke by telephone with both Joel Moyer and his father, and obtained a verbal statement by telephone. In that statement Joel Moyer accused Ronald Carroll of indecently assaulting him. He explained that the assault occurred after he had become drunk and intoxicated. He had been sick and had therefore removed his t-shirt. Whilst he was in the toilet, Ronald Carroll had come in. Whilst in the toilet, Ronald Carroll had kissed Joel Moyer on the lips and rubbed his penis through his boxer shorts. Joel Moyer objected, however Ronald Carroll continued kissing him. Joel Moyer explained to me that there was another boy who was in the house at the time, who was sleeping and was never aware of what had happened. Joel told me the other boy's name but I was unable to trace him as he was not from Joel's school or indeed from Joel's part of the United States.

{00052282.DOC/2}

_____
Deponent

_____
Notary Public

KLL/SEB.1.62180

I therefore never spoke with the other boy, and cannot now remember his name.

10. I spoke also with Mr. Moyer senior, his father. I explained to both Mr. Moyer senior and Joel that the difficulty was it was Joel's word against Mr. Carroll's. Accordingly, unless Mr. Carroll admitted the assault, it was unlikely there would be sufficient evidence to make a prosecution. This is particularly given that there was no other evidence including no forensic evidence available. Again, this conversation took place in late 2001 more than two years after the alleged incident, and there was no corroboration of Joel Moyer's account.

11. Thereafter, I got in touch with the Sheriff's Office local to Joel Moyer's home. I spoke to the Chief within that Sheriff's Office and I think the Sheriff's Office was something like Terrace Park Sheriff's Office. I think the Chief's name was Chief Bacon, although I am not sure. The Chief knew the Moyer family. He said that he would arrange for a Sheriff to take a statement from Joel Moyer during his holidays from University.

12. This written statement was taken and forwarded to me. It backed up the statement that Joel Moyer had given me by telephone. In particular, it accused Ronald Carroll of indecently assaulting him.

13. Thereafter, I did all usual checks on Ronald Carroll. By usual checks I mean going through the National Police computer. This would reveal any previous convictions against him. This would indicate any guilty finding against him. I also checked the Sexual Offenders Register. I also checked with criminal

{00052282/DOC/2}

.................................
Deponent

.................................
Notary Public

KLL/SEB.1.62180

intelligence to ascertain whether the police held any intelligence on Mr Carroll. There was no information from either source.

14. Thereafter myself and my colleague, Sharon Miller (an Acting Detective Constable who now works for the Metropolitan Police in London), went to Ronald Carroll's house at 256/5 Crewe Road North, Edinburgh. At 5:15 p.m. on Sunday 28th October 2001 we detained Mr. Carroll under Section 14 of the Criminal Procedure (Scotland) 1995 on suspicion of indecent assault as named as the person responsible. We cautioned him and detained him and he made no comment. We took him to Drylaw Police Station. Once there, the detention forms were completed. He was afforded an opportunity of having a lawyer present. He asked for Mark Thorley of Messrs Blacklock Thorley, Solicitors in Constitution Street, Edinburgh to be informed. He did not take the opportunity to contact anyone else to inform them that he had been detained. Thereafter, he was processed in the normal fashion.

15. Thereafter he was interviewed by myself and Sharon Miller. Both an audio and videotapes were taken of the interview. Mr. Carroll fully co-operated. The interview lasted from 6:37pm to 7:17pm. In the interview Mr. Carroll said two students stayed at his flat as part of a student program. He said he had become involved after answering an advertisement in the Edinburgh Evening News. He explained that the first time he met with the students it was when he was asked to meet a bus where he would be allocated the students who were staying with him. He said that they only stayed with him a few

{00052282.DOC/2}

_____
Deponent

_____
Notary Public

KLL/SEB.1.62180

nights and he did not see much of them. He denied sexually assaulting Joel Moyer or any student who stayed with him.

16. Since there was no evidence to charge Mr. Carroll, he was released from custody at 7:38 that evening.

17. No other evidence was ever forthcoming and no charges were ever libelled against him. Mr. Carroll was informed of the outcome as was Joel Moyer and Joel Moyer's father. I personally phoned both Joel Moyer and his father and told them the outcome of the inquiry.

18. Given that the inquiry has concluded the file will have been destroyed. I tend to keep files for a short while after the inquiry has concluded and thereafter they are destroyed. All that remains is a history of Mr. Ronald Carroll's custody, the detention and crime report. In addition, we have retained the audio and videotape. All the documents from my colleagues in England together with all the statements etc have been destroyed.

19. I shall ensure that the audio and videotape are retained by me. However I am not in a position to release these, as it would be a breach of data protection. A Court order would be required to enable me to release these.

All of which is truth, as the Deponent shall answer to God.

_____
Deponent

_____
Notary Public

KLL/SEB.1.62180

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was sent via facsimile and regular U.S. Mail, postage prepaid, to:

| | |
|---|---|
| Louis F. Gilligan, Esq.<br>Peter J. Stautberg, Esq.<br>Keating, Muething & Klekamp, PLL<br>1400 Provident Tower<br>One East Fourth Street<br>Cincinnati, OH 45202<br>513/579-6400<br>Attorneys for Plaintiffs | Gregory G. Beck, Esq.<br>KREINER & PETERS CO. L.P.A.<br>2055 Reading Road, Ste. 290<br>Cincinnati, OH 45202<br>(513) 241-7878<br>Attorney for Defendant Humana/Choice |

this 20th day of February, 2003.

Robert G. Hanseman

{00008309.DOC/1}